It's my fourth and last case of today. Brown v. Superintendent Greene, et al., number 14-2655. Ms. Freeman and Ms. Franti. Good afternoon, your honors. Ariana Freeman for Appellant Terry Brown, also known as Antonio Lambert. And I'll be referring to the appellant as Mr. Lambert. How did we get the AKA here? I'm sorry? How did we get the AKA? Was Lambert before? It was Lambert in state court and his habeas petition was filed under the name Brown. All right. I'll skip why, but all right, go ahead. May I reserve three minutes for rebuttal? You sure may. So Mr. Lambert's confrontation clause rights were violated when the admission of the non-testifying co-defendant statement happened at trial. And that alone would justify relief, and I'd be happy to come back to that later. But I suggest that your honors need not reach that alone, because something far more egregious happened here, and that was the prosecutor's conduct. What the prosecutor did here was tell the jury that the person referred to as the guy and the guy with the gun in Miguel Garcia's statement was actually Mr. Lambert. What is the nature of the claim, though, that you're raising as to prosecutorial misconduct? That is, you seem to reference due process as well as the Sixth Amendment violation. Your colleague on the other side of the aisle has made the point that at least as to the standard for a due process type of misconduct violation is not something that was specifically raised below. There's questions about procedural default. Do we need to get there, or is the essence of your argument really that the misconduct is the specific constitutional right, sort of that branch of misconduct that's referenced in Donnelly, and not the due process right, that is, conduct that's so infected at trial as to make the trial itself fundamentally unfair? I think the most straightforward way the court could approach this is as a straight, brutal, confrontation clause claim. If the court sees fit, because of the Commonwealth's argument regarding whether it's proper to consider a prosecutor's arguments in the context of a brutal violation, if the court felt it were necessary to address this as a prosecutorial misconduct claim, then we have set forth in the reply brief that that was exhausted as well in the state court. Either way, we would have to look to whether Bruton was violated, and it hasn't violated due to the prosecutor's conduct, and there is prejudice. There is clearly a substantial and injurious effect on the outcome of this trial. The simple answer to that is the primary question is whether the confrontation clause was violated in this case. So, you know, really what the prosecutor did was... Connect the dots. Well, yes, exactly, connect the dots. And the question really is whether there's clearly established federal law here that says a prosecutor can't do that. And while this particular factual scenario has never come before the court, it absolutely must be covered by the rule of Bruton. Why don't the Supreme Court's cases point the other way? That is, say we put aside some of the language in our own precedent which might suggest to the contrary, we accept the government's position that the Supreme Court's own cases say that we look to the face of the statement. If the argument is simply that it's linked up with other evidence introduced later in trial, that that's not insufficient to raise a per se Bruton type of violation. If the Supreme Court cases say that we look to the face of the statement, that linkage through other evidence actually introduced at trial doesn't give rise to a Sixth Amendment violation, then how could it be under those same cases that the face of a redacted statement with mutual terms then becomes a confrontation clause violation because of non-evidentiary remarks, something far less potent given the nature of instructions that you don't listen to. You don't decide the case based on arguments of counsel but on the evidence introduced at trial. How could then there be a confrontation clause violation through that linkage? Well, first, the U.S. Supreme Court cases don't say that you're not allowed to continue to consider other evidence admitted at trial. And in fact, in gray, the court says, you know, there isn't a bright line rule. Richardson didn't make a bright line rule that inference is not allowed. It depends on the type of inference. And so that really opens the door. And really, the rule that is established by Bruton is that there are some contexts where the risk is so great that the jury won't be able to ignore that redacted statement. Gray says to focus on the kind of inference, but it still points us to the face of the statement. How does Gray call into question the pretty explicit statement in Richardson that it's not sufficient to link up evidence that's introduced later in trial? Well, Richardson is distinguishable because in Richardson, the statement didn't incriminate anyone else. It wasn't like what happened here where we have Miguel Garcia saying, this person, that guy, you know, told me to pull over. He got out. He tussled with the victim over her purse, and then he shot her in the chest, and then he threatened me with a gun. I mean, everything here is incredibly accusatory of someone, this mystery guy, guy with the gun. And especially in light of the prosecutor's comments later saying, you know what, jury? That guy with the gun was Mr. Lambert. Then, you know, if Bruton doesn't cover that, then really the constitutional protections Bruton provides are farce Even if you're right, though, we have to decide it's a matter of clearly established Supreme Court law. And where the Supreme Court seems to have said explicitly that a neutrally redacted confession doesn't become a per se Bruton violation because of other evidence that's introduced at trial that allows for the inference of who fits into that redacted neutral term. How can we say it's clearly established that non-evidentiary remarks can serve that function? I think we have to look at the fundamental principles underlying the Bruton, Richardson, and Gray line of cases. But as soon as we do that, aren't we in the realm of extending Bruton and Frazier, not applying clearly established law? No, no, we're not. And I think White v. Woodall makes that clear, that there are certain fundamental principles. It's White v. Woodall and also Yarbrough that says that there are fundamental principles underlying these rules that the U.S. Supreme Court sets forth. And that's what you look at when you're applying clearly established federal law. If it conflicts with the fundamental principle of the law, then it is an unreasonable application of the law. And that's what we saw here with the Pennsylvania Supreme Court did. Are the prosecutor's comments in and of themselves a violation that calls for a new trial, or are they tied to the purported Bruton violation? And together, in other words, if there was not a Bruton Confrontation Clause violation, would the prosecutor's comments make any difference? I don't know the answer to Your Honor's question, but Darden and Donnelly tell us that if the prosecutor's actions cause a violation of one of the rights enumerated in the Bill of Rights, then there is a due process violation. And that's what we have here. So it did cause a Bruton violation. They're all wrapped together. As a practical matter, what is the prosecution supposed to do with the type of statement that was done here? Not introduce it at all? It's a statement, it's a confession, right? The prosecution has a choice. They either redact it so as not to violate Mr. Lambert's Confrontation Clause. How do they do that? Well, I think they would have to, you know, I don't know, Your Honor, I can't say exactly what they would have to do to the statement, but there would have to be a sufficient redaction, or there's always the option of severing the trials. And the Confrontation Clause is important enough that it trumps the prosecutor's desire for efficiency. We have to protect these rights. And really what we saw here is from the beginning, even before the statement was admitted, we saw the prosecutor using Garcia's statement, even in opening. She talks about a struggle with a purse that comes only from Miguel Garcia. That's not from Mr. Cheatham. That's not from the police officers that testified. None of the admissible evidence against Mr. Lambert talks about a robbery, a struggle with a purse, and even Cheatham, who does give inculpatory evidence against Mr. Lambert, although very suspect evidence for the reasons discussed in the brief, even he cannot say who was the shooter. Yet the prosecutor comes out really from beginning to end telling the jury to use the evidence Miguel Garcia gave, the statement Miguel Garcia gave against Mr. Lambert, and that they should find him guilty because the crime occurred in precisely the way that Miguel Garcia described in his statement when he referred to the other guy. Can you clarify some of your arguments? Say that we reject the argument that the combination of a redacted statement and prosecutors' remarks give rise to a per se brutal error. That is that we're not prepared to create a new class or category of statements akin to an unredacted statement or one that has deleted or blanks in it because a prosecutor makes reference to a name. Does that answer the merits of the argument you're raising, or are you also arguing that we can look to the prosecutor's statement itself as misconduct, that is as an application of frasier, and move on to the question of whether there was, if that was error, there was prejudice that was not cured by the instructions? Well, I would say that if the court does not want to use the prosecutor's comment while reviewing the brutal claim, then there is actually a brutal claim that is independent of the prosecutor's comment, so I would ask the court to look to that first. And under Gray, the rule that is set forth, as interpreted by Gray, is that if the redacted statement still obviously incriminates the defendant because of the context,  so I would say set aside the prosecutor's comment and still grant relief on the brutal violation. If we focus on the prosecutor's comment, like perhaps the Supreme Court itself was doing in frasier, and were to move on to a question of prejudice, the effect of curative instructions that were given or could have been given, is there analytically a difference between the prejudice inquiry that we would be undertaking and the harmless error inquiry for EDPA purposes? No. Any of the variations of the claims that have been presented to the court in this case all require the same correct harmless error analysis. They're all preserved constitutional claims, and the court must ask if there was a substantial and injurious effect on the outcome of Mr. Lambert's trial. So that would be the prejudice standard applied to a pure prosecutorial misconduct claim. So under that rubric, what is your answer to the analysis that was undertaken by the Pennsylvania Supreme Court, albeit under more of a prejudice approach, that is they were looking at it being an isolated reference to the name, that it was introduced in the part of the closing that went to Mr. Garcia, that it related to events after the murder, and that there was a curative instruction, a specific one offered that defense counsel declined? Well, my answers would be much the same as the arguments that we propounded in support of the Bruton violation, that it's an unreasonable determination of facts and it's an unreasonable application of the law. But primarily, it's an unreasonable determination of facts because it is impossible in this set of facts to say that her comment, although perhaps fleeting, did not directly link, did not really nullify, vitiate the redaction. And I don't see how that's possible. And I do think it's really informative to the court to look at the prejudice question, which is was there a substantial, was there a real prejudice here? And we know that the answer is yes, because if only the admissible testimony, if only the admissible evidence against Mr. Lambert were considered, there would have been no robbery conviction. It is a legal impossibility. There was no evidence to support robbery. There could be an argument, but you can't convict someone based only on a theory. There must be at least some evidence in support of that conviction. And so we know from that that the jury did, in fact, use Garcia's statement. Why isn't it a reasonable inference for the jury to draw the combination of Cheatham's testimony and the circumstances of the crime that officers testified to, that the reason that this elderly woman was shot with a handbag on the street was for purposes of robbery rather than random act of violence or an intentional? Well, I'm sorry, Your Honor. That's okay. Rather than just intentional homicide without any other purpose, as the purse might suggest. Right. So the police didn't provide any evidence in support of robbery. In fact, the only evidence that the police and medical personnel provided was that she was found with her purse, with her wallet inside, and there was nothing there that would support a robbery. Cheatham also did not. He didn't see the crime. He didn't see the shooter. He didn't see this tussle that the prosecutor referred to so many times over the purse. All he saw was two defendants leaving a car, two coming back, and one having a gun. At best, there could be implications. If things went down the way Cheatham described, then the prosecutor could argue the inference that Lambert was the shooter. But there's nothing there to support robbery, nothing whatsoever. Let me get back track. Let's assume for the moment that there was no prosecutor's comment made at closing that was in any way troublesome. You're still saying that there was a brutal violation per se? Yes. Because? Because given the set of facts and circumstances where, well, I think it is appropriate to consider what the prosecutor said in opening statement and already linking him. Let's assume there's nothing wrong with what the prosecutor said. I mean, it was during the course of the trial, they sought to admit this statement by Garcia and use symbols or whatever, the other guy, but there was nothing that was said by the prosecutor, closing or opening, that attempted to connect the dots, as I said before. And you're saying there's still a brutal violation that calls for a new trial? There is still a brutal violation because on its face, the statement of Miguel Garcia implicates someone in a crime. But then don't you really have a case that really falls in line with Frazier? The court says that you're not, the jury is not being asked to perform any mental gymnastics considering an incriminating statement? The difference between this case and Frazier is in Frazier, there was actually no non-testifying co-defendant statement admitted. There was only the prosecutor's actions in her opening statement where the prosecutor said the witness would testify and the witness would say X and the witness never came to the stand. That's right. Here we actually have a statement, a lengthy statement, that was read twice to the jury that directly implicated someone, some mystery man, as the shooter. And there was one person at defense table whom the prosecutor asked the court, the jury defined, was the shooter. So you're saying that the jury is being asked to perform mental gymnastics even without the prosecutor's statements? Yes. Why is this here? We think, okay, it's got to be because this person, Brown, is the, aka Lambert, is the one, can only be that person. Yes. How is that consistent with the language of Gray itself? That is, the Supreme Court offered as alternative language that would have been permissible, making reference to the other guys instead of blank or deleted, where that's the neutral term that the Supreme Court itself suggested and that is the term that is used throughout the redacted statement here. Wouldn't your argument just ultimately contravene what the Supreme Court was saying in Richardson, that Bruton and Richardson were not suggesting a sea change in the law such that severance would be required every time there was an introduction of a confession from a co-defendant or a co-conspirator, but rather that there was an alternative where neutral terms could be used? I think it's just important to consider that the non-testifying co-defendant statement in Gray was very different from the statement here. The circumstances were very different, and that's why the Bruton rule is so important, that there are certain contexts. Again, I keep coming back to this word context because we have to look at what the content of the statement was, what was going on at this trial, who was accused of playing what role, and how incriminatory the statement was, even without Mr. Lambert's name included. What are the characteristics of this statement if you're asking us to say this is a statement that as a matter of law could not be redacted, that severance was required, there were no permissible redactions that would avoid a confrontation clause violation. How would we distinguish this statement from the multitude of co-defendant or non-testifying co-defendant or co-conspirator statements that make reference to someone else, someone else involved in the offense? Well, Your Honor, I can't speculate as to how this particular statement or every other statement could be redacted, and I do think that it is conceivable that the statement could be redacted so as to protect Mr. Lambert's confrontational clause rights, but then it wouldn't serve the purposes that the prosecutor wanted it to serve. If with that concession, that is, that there is some way it could have been redacted, then don't we have a problem here because defense counsel, trial counsel, agreed to these terms and in fact proposed the terms that were used for this redaction, albeit once the severance motion was denied? We don't have a problem because the Pennsylvania Superior Court and the Supreme Court found that there was a preserved Bruton objection, and so the federal court can't impute any sort of waiver for failure to specifically object to the language that was used in the redaction. When the state court found no waiver, they found a preserved Bruton claim, and that's all that's relevant here. That is the claim that is before this court, and it's also noteworthy that the pretrial argument where a motions court denied the severance motion initially and suggested a redaction is not transcribed and is not in the record, and so we don't know the full extent of the objections that were interposed by trial counsel here, but we do know that the Pennsylvania Supreme Court found this to be a preserved claim. Why don't we hear from Mr. Frott, and we'll get back on rebuttal. Good afternoon, Your Honors. May it please the Court, my name is Sue Affronti. I represent the Commonwealth Appellees in this case. I guess a dumb question at the outset. Is it just administration and economics as to why you don't have severance and you have a joint trial? Your Honor. Because obviously if you had a severed trial, separate trials, we wouldn't be here today. You're correct. I would have two answers to that. First off, the United States Supreme Court has indicated, also in gray, that there's a strong preference for joint trials, and one of the reasons is inconsistent verdicts and the potential results to that. This case actually, I think, provides an interesting example of that. You have these two individuals, and my opponent is right. It is something of a black box when they get out of the car. We actually don't have direct witness about what happens, what scuffle happens. And the jury comes back and they come up with a second-degree verdict for Garcia and a first-degree verdict for Lambert. And I actually believe that if this trial had been severed, we'd be here today arguing about the first-degree verdict against Lambert versus the second-degree verdict for Garcia. It opens the door to that. That's a good reason why we don't sever all these trials. And, of course, Your Honor, you somewhat put the rabbit in the hat by saying, other than administration, there are a lot of murders, unfortunately, in Philadelphia. A lot of these are co-defendant cases, and the sheer volume would be crippling. And that is part of the analysis. And the Supreme Court has indicated that that is okay. I understand, as to prosecutorial misconduct, the procedural default argument that you've made as to a due process claim itself. But do you agree that to the extent what we're talking about here is, as Donnelly recognizes, a different sort of prosecutorial misconduct claim that is one that is premised on a violation of a specific constitutional right? Correct. That is something that, as to the Sixth Amendment violation, was raised and was addressed by the state courts. It was, absolutely. It was raised that way, and that is absolutely fairly before the court. The question is simply, as Your Honor noted earlier, the question is whether or not this can be cured through instruction. And the Supreme Court hasn't ruled on that, and the Pennsylvania Supreme Court decided, based in part by this Court's opinion in Sandini and also Frazier, that an instruction can cure in this situation. And then they looked at the prejudice. If what we're looking at is just a straightforward application of Frazier, that is, we are looking to the misconduct of a misstatement, these remarks by the prosecutor, why doesn't Frazier tell us clearly that the Pennsylvania Supreme Court engaged in unreasonable application of clearly established federal law, where Frazier identifies exactly what we should look at for prejudice? That is, their first criterion is that we have there a non-evidentiary remark, not something that occurred in the course of trial, because it was merely a paraphrase of a statement that was never entered, number one. Number two, that it was a co-conspirator statement and not a co-defendant statement in a joint trial that would require the jury to engage in those sorts of mental gymnastics. And then three, that in Frazier it was not, that paraphrase was not something that was vitally important to the government's case. That seems to be, in Frazier, what the Court identifies as the relevant criteria to determine prejudice. And isn't it the case that each one of those points 180 degrees the other way when it comes to the facts of this case? I would disagree particularly as to the third point. I don't believe this point is vital at all. I think it's actually exceedingly unimportant. What they're talking about is the time after the crime when Garcia and Lambert go back to Garcia's house. The crime happens when they're all in the car together with Cheatham. That's the main event here. Whether or not Garcia takes Lambert home has no evidentiary value as to Lambert. It has a lot of evidentiary value as to Garcia who was trying to pretend that he really was shocked by everything that happened. It really has no evidentiary value as to Lambert. It simply didn't matter. What happened after the crime as to Lambert really doesn't matter. So I think as to that third point on Frazier, it's clearly not met. I think that was basically what the Pennsylvania Supreme Court was getting at. We have the fact that it's introduced. It's used in the closing. That's the key, isn't it? With not one, not two, but three times reference to what he said as what Garcia has said. What significance do we attach to the fact that the jury in the course of deliberations specifically requested a copy of Garcia's statement that has been re-read to them by the court reporter? A couple of things. I think all that's before the court today is that one misstatement in closing, just the one. As to the rest of them, I don't believe they were ever argued to the state court. I could be mistaken about that. But if I'm remembering right, in the district court below, there were two separate prosecutorial misconduct claims. She argued that Lambert was the person referred to as the, quote, guy with the gun, close quoting Garcia's redacted statement. Right, but that was on the one occasion in reference to him being at home. There were other breaks. And my opponent referred to alleged breaks. My opponent referred to opening as well. These were not arguments made to the state court. Under the EDPA analysis, what this court must do is they must look at the legal arguments presented to the state courts, and we're limited to those arguments. That's not merely a procedural default analysis. It's also an EDPA analysis. You must look at the law, the arguments, the facts presented to the state court. Let's say, hypothetically, there were eight or ten problems with the closing, but only one is briefed to the Pennsylvania Supreme Court. Only that one can be considered by this court. The rest of it can't be. It wasn't litigated in state court. You were assessing what the state court did, and it can't be unreasonable to fail to account for arguments that were never presented to the court. It's a lot easier when you have a whole new argument before you hear to make it sound much more appealing. The Pennsylvania Supreme Court made reference, concluded there wasn't prejudice because, among other things, it said that there was simply an isolated reference to the name. Right. If a reading of the closing suggests that it's not, in fact, an isolated reference, but that there are more places where Lambert's name is used and is directly connected to what Garcia said, why isn't that something to take into account in looking at whether the Pennsylvania Supreme Court engaged in clear error? Because you were limited to the arguments made to the Pennsylvania Supreme Court, and if the Pennsylvania Supreme Court was told there was one break in redaction, there was one problem, then that is all the Pennsylvania Supreme Court is held responsible for. That's both a default argument and an EDPA standard of review argument. You cannot present a partial argument to the state court, come to federal court, and say, here's some better stuff, and then have the federal court look at it. If the state court is only presented with a limited argument, that limited argument remains in federal court.  We are truly limited both under a standard of review and under default doctrine. Let's look at the other things that they considered in terms of prejudice, even assuming that there is a single reference in the closing brought to their attention and they look at it as an isolated reference. The other things that they're considering seem to go to strength of the evidence, but here in terms of Cheatham's statement, this isn't a neutral, independent third-party witness. It's someone who might have been charged as an accomplice, was high on drugs and falling asleep over the course of the crime. And in terms of his own perception and things to which he could testify, was fairly limited. So if that's all it rests on, a first-degree murder conviction with no physical evidence, doesn't that indicate that we need to ascribe more importance to the jury's specific request for Garcia's statement and the uses of Garcia's statement that the prosecutor made with reference to Lambert in closing? A couple things in response. First off, the jury asked for the statement. We don't know which defendant they were thinking about when they asked for the statement. It would make an awful lot of sense to me if they were considering Garcia's culpability if they wanted to see the statement as to Garcia, to see if they really did believe his statement that he didn't do anything and he was simply the driver. And second off, I would dispute Your Honor's perception that there was only this witness. These individuals, Garcia and Lambert, were found together later that night with the gun that is proved to be the gun used to shoot Mary Edmonds. And that gun is direct evidence as well about what happened. It does confirm a lot of what Cheatham tells us. And it's just later that night. Not much time has passed. But it issues a first-degree murder conviction. In other words, who was the shooter? And as to that, Cheatham has some significant issues as to credibility, including Cheatham and Garcia are friends, right? So in light of that, why wasn't it clear error on the part of the Pennsylvania Supreme Court to find no prejudice? That is, that standard instructions were sufficient to cure, given the far from overwhelming evidence that was put forward against Lambert. I think I would point out, Your Honor, the standard isn't clear error. The standard is was it objectively unreasonable. And that's a different thing. The Supreme Court has actually said that, that it's different. Clear error does not rise to the level of a definition. I understand. I'm using shorthand for an unreasonable application of clearly established Supreme Court law. And I think the reason is because this jury looked at Cheatham. This jury believed Cheatham. Neither of these verdicts could have come out unless this jury believed Cheatham. Garcia's statement as to Garcia, let's think about him just for a moment. He says, I was just the driver. I was just there. And, I mean, I have no idea what was going on. I have no idea. The best evidence against him is Cheatham himself. And he really is the primary witness against everybody. And the jury believed him. Yes, he had these warts. He had these problems. But the jury believed him. The jury saw Cheatham. An appellate court doesn't get that opportunity. And when we're reviewing harmless error, prejudice, wrecked, all these different standards, we have to factor that in. We have to factor in credibility determinations that were clearly, definitively, and absolutely reached by the jury. And when you have a case that does hinge on one witness, like this one, it is very plain what the jury did. The jury believed Cheatham. And Garcia's statement didn't corroborate that, actually. It impeached it. Garcia's statement said Cheatham did it. If we're to presume, as my opponent argues, that the jury looked through that statement, that they believed, they thought it was Lambert and Cheatham that were being named, if that's true, then that statement impeached Cheatham. It had to have. Because what Garcia was saying was, I was just there driving. Cheatham jumped out of the car. Lambert jumped out of the car. And they ran over and they robbed and killed this woman. That impeaches Cheatham's testimony. If you take that statement out, the case doesn't get worse. The case gets better. You lose impeachment against Cheatham. And so as to Lambert, I actually don't think that that statement had any effect at all, whatever the jury did with it. How do you get around Vasquez in Washington? As I argued in my brief, I believe Vasquez is no longer good law under White v. Woodall. White v. Woodall is very clear that we can no longer use the unreasonable failure to extend doctrine that this court had been using. And in Vasquez, they actually describe the holding of Gray. And it says Gray held that redactions that replace a proper name with an obvious blank, the word delete, a symbol, or similarly notify the jury that a name has been deleted. So that's an admission by this court that Gray itself is limited. But what they did in Vasquez, which was valid under the law of this circuit at the time, was they said, what's the next step? They identified what the next step was, and they determined it was unreasonable not to go there. That is no longer valid law after Woodall. And that's how we get around Vasquez. As to Washington, respectfully, Your Honor, the case itself did not have much explanation. It seems built on Vasquez. I would encourage the court if they think that's... It was a second go-round after a rematch in the Supreme Court. It was, and specifically referencing White v. Woodall. I would point out that that opinion does not address the circuit split. It does not clearly address the holdings of Gray as acknowledged by this court in Vasquez. And it doesn't really address the limits of Vasquez. I would point out that when a matter gets remanded, the briefing does tend to be limited. And in the case of Washington, it was. It was a very brief briefing before the court. I think with more time and more litigation on the matter, a better result could have been reached. I would encourage the court if they think there is a problem and if they're uncomfortable overruling Vasquez as no longer good law, I think an en banc would be appropriate and possibly the very good path to take. Thank you, Your Honor. Oh, I'm sorry. Just one more question in terms of whether or not we have here an unmeasurable application of Frazier. There are three times that the Pennsylvania Supreme Court indicates that it's basing its reasoning in part on the premise that an unintentional unredaction, that is an unintentional misstatement by the prosecutor does not give rise to a Bruton violation. And it talks about Frazier as involving or not involving a deliberate attempt to undo a proper redaction and therefore not involving the prospect of prosecutorial misconduct that would affect the use the jury could make of a non-testifying co-defendant statement. It says that the government obviously has a difficult task arguing that a jury may easily perform the mental gymnastics required by Bruton if the prosecutor learned it in the law intentionally betrays difficulty keeping the evidence separate. And it seems to agree with the proposition that there would be no point redacting an otherwise inculpatory statement if that measure could be deliberately undone by a lawyer. And it's citing Frazier as the basis for this distinction of deliberate and non-deliberate. But in Frazier, the Supreme Court, although agreeing with the circuit that factually it was not intentional, also says, quote, we do not believe that the prosecutor's good faith or lack of it is controlling in determining whether a defendant has been deprived of the right of confrontation guaranteed by the Sixth and Fourteenth Amendments. And Bruton, Gray, and Frazier all, I mean, the concept of mental gymnastics by a jury seems to turn on the effect of a statement and misconduct on the jury, not on whether it's deliberate or not. So given what seems to be a misplaced reliance by the Pennsylvania Supreme Court on Frazier, which by its term stands for the opposite proposition, as well as the other Supreme Court case law, why don't we have there an unreasonable application or even contrary to by the Pennsylvania Supreme Court? I would just point out that under the AEDPA, when we're looking at the state court's opinion, we're not looking to parse the language. What we're doing is we're looking to the decision. The Supreme Court's been very clear about that. This isn't about grading the paper. This isn't about, well, there's one mistake there, there's another mistake there. What the court needs to do is they need to take everything together and see that if the decision, the ultimate result, is unreasonable. I would argue in this case it isn't. But if there is a single misstatement, and I agree with you, Judge Krause, I believe that it is the overall impact as opposed to the intentionality. If the decision in the case is not unreasonable, then one misstatement in the opinion is not controlling and it's not dispositive, not under contrary to, not under unreasonable application. Thank you very much. Thank you, Your Honor. What do you think about the suggestion that maybe Washington needs to be revisited and back?  The Commonwealth sought certiorari after the 2015 Washington decision. That was denied. The panel in Washington considered White v. Woodall and, in fact, determined that it was not extending Supreme Court law, it was applying Supreme Court law. And White v. Woodall itself, as well as Yarbrough, described that there is sometimes a fine line and apparently it was not crossed here. And so what the court did in Washington was to apply the fundamental principles. And that's also what I'm asking the court to do here. Actually, Yarbrough says certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt. And the rule here, looking back to Gray, is that the inferences at issue involve statements that, despite redaction, obviously refer to someone, often obviously the defendant. And those are inferences that the jury could make, even if it's with the very first piece of evidence admitted. That is absolutely the case here. That is a fundamental principle in an application of the Bruton rule. Is Vasquez still good law? Vasquez, I do believe that Vasquez still is good law, yes, Your Honor. But I don't think that this court needs to rely on Vasquez. Because, again, we're applying Bruton, Richardson, and Gray. Vasquez and Washington are other applications, examples of applications of Bruton, Richardson, and Gray. And so we don't need to look to that here. A couple other quick things. Even the break that was the primary break here about the time that Mr. Lambert allegedly went to Mr. Garcia's house, it was not an isolated break that only revealed to the jury that that big guy at the house was Mr. Lambert. This is one statement. It is very clear in the context of this statement that this guy, the guy with the gun, the same one who came to the house, was the same one that Garcia alleged did the shooting, and the same one that Garcia alleged threatened his life, and the same one that Garcia alleged threw the gun at him when the police pulled him over. It only takes one break. The break isn't isolated to that portion of the statement. And let's see. I just wanted to point out that the Commonwealth, I think, both in the briefs and the argument has yet to provide an adequate explanation for how the jury could have come to convict Mr. Lambert of robbery if it did not use Garcia's statement against him. And I think that is just as positive. It is actual prejudice that we see here. Can you address the argument that was made that in terms of what was presented to the state courts, that there was only argument as to one phrase, one use of the guy with the gun, and therefore in reviewing the state Supreme Court's decision that we're limited to considering that, even in evaluating the prejudice determination that was made by the state court? I would refer back to the point I made a few moments ago about how the one break in the redaction really exposed the other guy as Mr. Lambert throughout Garcia's statement. And so that's why it doesn't matter whether there was a specific objection made because each time that the prosecutor nullified the redaction, the effect is the same. And you contend that argument, that is, the ultimate effect was raised to the state court and improperly presented on appeal? Yes, absolutely, both to the trial court and to the appellate courts. The trial counsel argued that the prosecutor's statement nullified the redaction and exposed to the jury that Garcia was talking about Mr. Lambert. Thank you very much. And I would ask if the counsel could get together with the clerk's office and have a transcript prepared of this oral argument, have the costs split. And I'll just end with a comment. One of the highest compliments I can give to anyone is that he or she is a pro. You are both pros. Congratulations. Thank you, Your Honor.